## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SOTAT, LLC, a Florida limited liability company, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | **Patent Case** |
| | ) | |
| Simplisafe, Inc., a Delaware corporation, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

For its Complaint, Plaintiff SOTAT, LLC ("SOTAT"), by and through undersigned counsel, respectfully alleges, states, and prays as follows:

## PARTIES

1.     SOTAT is a Florida limited liability company with its principal place of business at 2115 North Pearl Street, Jacksonville, Florida 32206.

2.     Upon information and belief, Defendant Simplisafe, Inc. ("Defendant" or "SimpliSafe") is a corporation registered and existing under the laws of Delaware with a registered agent at 1209 Orange Street, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

3.     This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code, §§ 271 and 281, *et seq*.  Accordingly, this Court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.     Defendant is subject to personal jurisdiction in this District and subject to this Court's specific and general jurisdiction, pursuant to due process and the Delaware Long-Arm

Statute, on the grounds that, on information and belief, Defendant resides in the State of Delaware, is engaged in systematic and continuous business activities in this District, and has committed acts of patent infringement in this District and the State of Delaware. Defendant's registered agent is The Corporation Trust Company located at 1209 Orange Street, Wilmington, Delaware 19801.

5.      Venue is proper in this District under 28 U.S.C. § 1400(b) because Defendant resides in the State of Delaware and has committed acts of infringement in this District. SOTAT has also suffered harm in this District.

## THE PATENTS-IN-SUIT

6.      SOTAT is the assignee of all right, title, and interest in United States Patent Nos. 9,854,207 ("the '207 Patent") and 10,511,809 ("the '809 Patent") (collectively, the "Patents-in-Suit"), including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the Patents-in-Suit. Accordingly, SOTAT possesses the exclusive right and standing to prosecute the present action for infringement of the Patents-in-Suit by Defendant.

7.      The '207 Patent, filed as U.S. Patent App. No. 12/462,187 on July 31, 2009 and entitled "Mobile Surveillance System," legally issued on December 26, 2017 and is valid and enforceable.

8.      A true and correct copy of the '207 Patent is attached hereto as Exhibit A and incorporated herein by reference.

9.      The '809 Patent, filed as U.S. Patent App. No. 15/829,954 on December 3, 2017 and entitled "Mobile Surveillance System," claims priority to U.S. Patent App. No. 12/462,187, legally issued on December 17, 2019, and is valid and enforceable.

10.     A true and correct copy of the '809 Patent is attached hereto as Exhibit B and incorporated herein by reference.

11.     The Patents-in-Suit describe improved electronic surveillance systems and methods that include a server, a mobile device, and a surveillance device comprising a camera, a motion detector, and (optionally) additional components for capturing audio, images, point in time, and location data from a surveillance area. *See, e.g.*, '207 Patent at col. 10, ll. 31-62.

12.     For decades up to and including the early 2000's, conventional video surveillance systems typically used analog CCTV cameras.  Exhibit E, Declaration of Mr. Karl Ginter at ¶ 16. These analog cameras produced video images and surveillance systems recorded them to VHS tapes or, using later data conversion techniques, to a digital video recorder ("DVR"), or some other storage mediums that, in some instances, required regular replacement or management.  *Id.*  These analog systems had many drawbacks, including but not limited to their limited storage space for storing hours of footage, a lack of contextual information transmitted in conjunction with captured footage, and an inability to configure and customize when the camera was operational or recording and/or transmitting captured surveillance data.  *Id.*  While early IP-enabled cameras capable of producing digital video surveillance were introduced in the early- to mid-2000's, these IP-enabled cameras suffered from some of the same drawbacks as their analog counterparts.  *Id.*  For example, even though the surveillance footage could be recorded and/or transmitted digitally, and DVRs or later network video recorders ("NVRs") could be used for storage in place of VHS tapes, the digital systems still suffered from constraints stemming from one-way communication between the cameras and any recording system, a limited storage capacity and difficulty in transmitting large amounts of data (both of which led to a degrading of quality in the recorded video and audio), a

lack of contextual information accompanying the recorded footage, and limited user options for configuring camera operations and data transmissions. *Id.*

13.     Both these conventional analog and digital video surveillance systems were monitored by users or security personnel who were required to either actively monitor the surveillance data captured by the cameras in real-time or review footage stored to the VHS tapes, DVR, NVR, or other storage medium. *Id.* at ¶ 17. When these surveillance systems were not actively monitored, they suffered from significant delays between the time of a possible incursion or the occurrence of an event of interest and the time at which the monitoring party was made aware of the incursion and/or reviewed any relevant surveillance data. *Id.* at ¶ 17. These conventional systems did not provide users with customizable and/or user programmable criteria to alert an end user of a potentially relevant incident. *Id.* at ¶ 17.

14.     The Patents-in-Suit expressly acknowledge preexisting electronic surveillance systems, identify a number of shortcomings associated with these prior systems, and address these shortcomings by claiming non-conventional interactions within specific configurations of hardware components.

15.     The identified shortcomings of prior systems include, but are not limited to: (1) inefficient use of components and resources within the system (*see, e.g.*, '207 Patent at col. 1, ll. 64-67); (2) storage demands and capacity limitations associated with the components of the system (*see, e.g.*, *id.* at col. 5, ll. 14-16); (3) an inability to parse different types of security data (e.g., audio and video) and only transfer desired data types at desired times or upon the occurrence of specific events (*see, e.g.*, *id.* at col. 5, ll. 24-31); (4) false alarms and an inability to anticipate a possible incursion prior to an actual security breach (*see, e.g.*, *id.* at col. 1, ll. 64-67); (5) the opportunity for an intruder to tamper with the surveillance system (*see, e.g.*, *id.* at col. 1, ll. 51-

4

52); (6) the lack of a user-friendly GUI for scheduling the activation, recording, and/or transfer of surveillance data (*see, e.g.*, *id.* at col. 6, ll. 18-25); (7) delays between an incursion and when a user might become aware of an alert (*see, e.g.*, *id.* at col. 1, ll. 49-50); and (8) the insufficiency of information transferred from the surveillance area to a remote monitor regarding the nature of an alarm (*see, e.g.*, *id.* at col. 1, ll. 50-51).

16.    The Patents-in-Suit further acknowledge, "More sophisticated electronic surveillance systems are available in the prior art that are able to communicate with base stations at remote locations and report alarm conditions . . . ." *See id.* at col. 1, ll. 53-55.

17.    The Patents-in-Suit then explain, "[I]t is an object of this invention to provide an improved mobile surveillance system which overcomes one or more of the aforementioned problems of existing surveillance systems." *Id.* at col. 2, ll. 1-4.  To this end, the claims of the Patents-in-Suit recite specific and unconventional devices and processes that overcome the identified problems and improve upon electronic surveillance technology.  *See, e.g.*, Exhibit E at ¶¶ 15-22.

18.    The claims of the Patents-in-Suit introduce, among other things, a new integration of motion detection that was not found in the art at the time—using a motion detector not merely to detect motion, but to marshal and deploy additional surveillance resources in a more efficient and targeted manner.  *See, e.g.,* '207 Patent at col. 10, ll. 31-62; *see also* Exhibit E at ¶ 18 ("The '207 and '809 Patents describe, among other things, integrating a motion detection device into the surveillance camera that serves as a trigger for activating one or more other components and/or initiating one or more processes related to the capture, transfer, and recording of surveillance data.").  For example, the '207 and '809 Patents describe: initiating the capture of surveillance data and/or the transfer of surveillance data upon the detection of motion measurements exceeding a

threshold at a surveillance area; initiating the storage of surveillance data upon the detection of motion measurements exceeding a threshold at a surveillance area; and causing a mobile device to activate upon the detection of motion measurements exceeding a threshold at a surveillance area. Exhibit E at ¶ 18.

19.     These features resolve multiple drawbacks associated with the earlier conventional systems, including but not limited to inefficiencies resulting from the continuous capture of video and/or audio, the transmission and storage of large quantities of data unrelated to an incursion or event of interest, the need for active system monitoring, and the failure to provide users with real-time and actionable information even when not actively monitoring the system. *Id.* at ¶ 19. In addition, because a user is not only alerted to motion detected at a surveillance area in real-time but provided with real-time actionable information in the form of video and/or audio surveillance data, the systems serve to reduce false alarms and allow the user to anticipate the presence of an intruder who may approach the system in an attempt to tamper with the system or disable it. *Id.* at ¶ 19.

20.     The claims of the '207 and '809 Patents further describe techniques for updating surveillance data for a predetermined amount of time following the detection of motion and parsing video data from audio data such that the two forms of data can be transmitted at different times and/or upon the occurrence of different events. *See* '207 Patent at claims 8 and 23; *see also* '809 Patent at claims 7 and 17; Exhibit E at ¶ 20. Among other things, these features improve upon the earlier conventional systems by conserving data storage, managing bandwidth usage within the system, allowing users to customize the type and amount of transmitted surveillance data, and preventing the transmission and storage of unhelpful or undesired information. Exhibit E at ¶ 20.

21.     The features and improvements described and claimed in the '207 and '809 Patents therefore solved multiple problems associated with the earlier conventional systems, and these solutions were not longstanding, fundamental, or routine practices in the field of electronic surveillance at the time of the '207 and '809 Patents' effective filing date.  *Id.* at ¶ 21.

22.     The claims of the '207 and '809 Patents also recite an improved graphical user interface ("GUI") for display and use at a mobile device.  *See, e.g.*, '207 Patent at claim 27; *see also* '809 Patent at claims 1, 10, and 18; Exhibit E at ¶ 22.  The graphical datebook, used for scheduling the activation, recording, and transfer of surveillance data (s*ee, e.g.,* '809 Patent at col. 6, ll. 12-22), provided a level of functional control and customization not available to users of the earlier conventional surveillance systems and was not a longstanding, fundamental, or routine practice in the field of electronic surveillance at the time of the '207 and '809 Patents' effective filing date.  Exhibit E at ¶ 22.

## THE EXEMPLARY SIMPLISAFE PRODUCTS

23.     SOTAT incorporates by reference all previous allegations as though set forth fully here.

24.     Defendant designs, manufactures, and sells surveillance systems, each comprising at least one network-connected surveillance device, including a camera and motion detector, in wireless communication with at least one mobile application.

25.     Defendant's "SimpliSafe" branded surveillance devices include its network-connected security cameras (indoor and outdoor), doorbells, and security systems that include motion detection and are configurable to transmit surveillance data to a mobile device using Defendant's mobile application.  Defendant's surveillance devices include at least all versions and

generations of its Outdoor Camera, Indoor Camera, and Video Doorbell Pro products (each an "Exemplary Simplisafe Product").

26.    Defendant's mobile application includes at least the SimpliSafe Home Security App (also referred to as the "mobile application" or "Security App").

27.    With respect to the patented systems and methods, each of the Exemplary SimpliSafe Products, together with Defendant's mobile application, operates the same and shares the same functionality.

28.    Each Exemplary SimpliSafe Product includes a camera, sensors, and other components that capture surveillance data of a surveillance area.  The camera is operably engaged to a motion detection mechanism for detecting variations in motion measurements at the surveillance area.

29.    End users of the Exemplary SimpliSafe Products infringe system and method claims of the Patents-in-Suit (e.g., claim 19 of the '207 Patent) by making and using the patented system as a whole in a manner in which each and every element of the system claims are met.

30.    End users of the Exemplary SimpliSafe Products also infringe method claims of the Patents-in-Suit (e.g., claim 10 of the '809 Patent) by performing each and every element of the method claims.

31.    Specifically, end users position at least one of the Exemplary SimpliSafe Products at a surveillance area for capturing surveillance data at the surveillance area.

32.    A transmitter is linked to the Exemplary SimpliSafe Product for wirelessly communicating surveillance data to end users' mobile devices, upon which Defendant's mobile application is installed.  The surveillance data is transmitted to the mobile device via a server.

33.     End users use Defendant's mobile application installed at the end users' mobile devices to wirelessly communicate with, configure, and control the Exemplary SimpliSafe Product from the mobile device via the server.  In particular, end users use Defendant's mobile application to activate the Exemplary SimpliSafe Product, start and stop the capture of surveillance data (e.g., video and/or audio) at the surveillance area, and control the transfer of the surveillance data from the camera to the mobile device.

34.     Upon detection, by the motion detection mechanism, of a motion detection measurement that exceeds a threshold, the surveillance data is wirelessly communicated from the Exemplary SimpliSafe Product to the end users' mobile devices, via the server, using a transmitter linked to the camera.  The end users' mobile devices activate upon receipt of the surveillance data when the data is transmitted to the mobile device and the mobile device emits or displays a notification, video, audio, or haptic feedback.

35.     End users also use Defendant's mobile application installed at the end users' mobile devices to schedule the recording and transfer of the surveillance data using a datebook that includes days of the week and times of day.

36.     Defendant displays and advertises its surveillance systems through summary descriptions, user manuals, videos, pictures, and technical specifications posted on its website (https://simplisafe.com/).  The content of Defendant's website is incorporated herein by reference.

37.     Defendant also displays, advertises, and demonstrates its surveillance systems through summary descriptions, user manuals, pictures, videos, technical specifications, and live demonstrations posted on and through third party sites such as YouTube.  YouTube videos depicting the systems and live demonstrations of the systems are published by Defendant and can

be viewed at https://www.youtube.com/@simplisafeofficial/videos.  The content of Defendant's YouTube videos is incorporated herein by reference.

38.    Defendant's display, advertisement, and demonstration of its surveillance systems intentionally instruct, and are specifically intended to cause, end users of the Exemplary SimpliSafe Products and Defendant's mobile application to infringe the system and method claims of the Patents-in-Suit throughout the United States, including this District and the State of Delaware.  For example, as further described in Exhibits C and D, Defendant instructs end users to perform each step or action described above.  Defendant also intentionally instructs end users to infringe the system and method claims of the Patents-in-Suit through its other published summary descriptions, user manuals, videos, pictures, and technical specifications.

39.    Exhibit C includes a chart comparing exemplary independent claim 19 of the '207 Patent to a surveillance system assembled by an end user at Defendant's instruction, the surveillance system including an Exemplary SimpliSafe Product together with Defendant's mobile application (necessarily installed at a mobile device) and a wireless network (collectively, an "Infringing System").  In particular, the chart at Exhibit C demonstrates how Defendant instructs users to make and use an Infringing System by connecting and configuring an Exemplary SimpliSafe Product using Defendant's mobile application installed at a mobile device.  With respect to the patented systems and methods, each Exemplary SimpliSafe Product operates the same and shares the same functionality.  As set forth in the chart, the Infringing Systems made and used by end users, at Defendant's instruction, satisfy all elements of one or more claims of the '207 Patent and therefore practice the technology claimed by the '207 Patent.

40.    SOTAT incorporates by reference in its allegations herein the claim chart of Exhibit C.

10

41.     Exhibit D includes a chart comparing exemplary independent claim 10 of the '809 Patent to end users' use of Infringing Systems.  In particular, the chart at Exhibit D demonstrates how Defendant instructs users to make and use an Infringing System by connecting and configuring an Exemplary SimpliSafe Product using Defendant's mobile application installed at a mobile device.  With respect to the patented systems and methods, each Exemplary SimpliSafe Product operates the same and shares the same functionality.  As set forth in the chart, the use of the Infringing Systems by end users, at Defendant's instruction, satisfy all the steps of one or more claims of the '809 Patent and therefore practice the technology claimed by the '809 Patent.

42.     SOTAT incorporates by reference in its allegations herein the claim chart of Exhibit D.

43.     After an end user has followed Defendant's instructions for setting up a surveillance system at a surveillance area and configuring an Exemplary SimpliSafe Product for communication with a mobile device using Defendant's mobile application (through, for example, the user's home router or wi-fi network), there are no substantial non-infringing uses of the surveillance system.

44.     Further, the Exemplary SimpliSafe Product and Defendant's required mobile application are a material part of the patented systems and methods.  The only components that end users contribute to the system are a home network and a mobile device on which to install Defendant's mobile application.  All the claimed functionality recited in the patented system and method claims are performed by the Exemplary SimpliSafe Product and Defendant's mobile application.

45.    Defendant also makes and uses the patented system by combining each and every element of system claims recited in the Patents-in-Suit (e.g., independent claim 19 of the '207 Patent) in the same infringing manner as described in Exhibit C with respect to end users.

46.    Specifically, Defendant makes the patented system by combining at least one Exemplary SimpliSafe Product, a server (for example, a wi-fi router), Defendant's mobile application, and (necessarily) a mobile device upon which the mobile application is installed. Defendant also uses the patented system by putting the system as a whole into service (e.g., in instructional videos, marketing materials, and demonstrations—some of which are included in Exhibits C and D), and using it for its intended purpose, in the same infringing manner as described in Exhibit D with respect to end users.  Defendant uses and controls the entire system in an infringing manner and obtains benefit from doing so.

47.    Defendant makes and uses each and every element of at least the independent system claims in the Patents-in-Suit (e.g., claim 19 of the '207 Patent) in the same infringing manner as described in Exhibit C with respect to end users.

48.    Defendant also practices each and every step of the patented methods by performing each stage of the method claims recited in the Patents-in-Suit (e.g., independent claim 10 of the '809 Patent) in the same infringing manner as described in Exhibit D with respect to end users.

49.    Defendant's making and using of the entire patented systems, and practicing of the patented methods, are well-documented on its live demonstration YouTube videos (https://www.youtube.com/@simplisafeofficial/videos), advertisements, user manuals, and technical specifications, including but not limited to the materials identified and depicted in Exhibits C and D.

50.     Because Defendant's testing, demonstrating, and marketing of the configuration and use of the Exemplary SimpliSafe Products necessarily involved Defendant's mobile application installed at a mobile device, Defendant also made and/or used each and every element of the patented systems, and practiced each step of the patented methods, during the development, testing, demonstration, and marketing of each Exemplary SimpliSafe Product, and Defendant continues to make and use the entire patented system, and practice each step of the patented methods, each time it tests, demonstrates, or markets its Exemplary SimpliSafe Products or a feature thereof.

51.     Defendant derives substantial financial benefit from its making and using of the patented system, and its practicing of the patented methods.  The above-described making and using of the patented systems, and practicing of the patented methods, have been used to sell the Exemplary SimpliSafe Products to consumers.  Without Defendant's making and using of the patented systems and practicing of the patented methods in its instructional and marketing materials, Defendant could not have sold its surveillance systems.

## NOTICE OF INFRINGEMENT

52.     SOTAT incorporates by reference all previous allegations as though set forth fully here.

53.     SOTAT's counsel emailed a letter to Defendant on May 3, 2023, that identified the Patents-in-Suit and the Exemplary SimpliSafe Products, and explained how the Exemplary SimpliSafe Products infringe the Patents-in-Suit.  Defendant acknowledged receipt of SOTAT's letter on May 10, 2023.

54.     Therefore, Defendant has had notice of the '207 Patent and the '809 Patent, and its infringement since at least May 3, 2023.

55.     On information and belief, Defendant itself is unaware of any legal or factual basis that its actions solely, and in combination with the actions of its customers and end-users, do not constitute direct and indirect infringement of the Patents-in-Suit.  To date, Defendant has not produced any opinion of counsel, request for opinion of counsel relating to the scope, interpretation, construction, enforceability, unenforceability, or the infringement or potential infringement of any claim of the Patents-in-Suit.  In addition, Defendant has not produced any complete evaluation, analysis, or investigation relating to the validity of the Patents-in-Suit.

56.     Defendant's actions of, inter alia, making, importing, using, offering for sale, demonstrating, advertising, and testing the Exemplary SimpliSafe Products constitute an objectively high likelihood of infringement of the '207 Patent and the '809 Patent, which were duly issued by the United States Patent and Trademark Office and are presumed valid.  Since at least the receipt of SOTAT's letter dated May 3, 2023, Defendant is aware that there is an objectively high likelihood that its actions constituted, and continue to constitute, infringement of the Patents-in-Suit and that the Patents-in-Suit are valid.

57.     Despite Defendant's knowledge of that risk, on information and belief, Defendant has not made any changes to the relevant operation of the Exemplary SimpliSafe Products and has not provided its users and/or customers with instructions on how to avoid infringement of the Patents-in-Suit.  Instead, Defendant has continued to, and still is continuing to, among other things, make, import, use, offer for sale, demonstrate, advertise, and test the Exemplary SimpliSafe Products.  As such, Defendant willfully, wantonly and deliberately infringed and is infringing the Patents-in-Suit in disregard of SOTAT's rights.

## COUNT I
### (Direct Patent Infringement of the '207 Patent)

58.     SOTAT incorporates by reference all previous allegations as though set forth fully here.

59.     Defendant has infringed and continues to infringe one or more claims of the '207 Patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing in or into the United States all or portions of the surveillance systems identified above.

60.     Defendant's infringing acts are without license or authorization from SOTAT.

61.     Defendant has had notice of the '207 Patent and its infringement since at least May 3, 2023.  Defendant's infringement is therefore willful and continuing, and this case is exceptional under 35 U.S.C. § 285.

62.     As a direct and proximate result of Defendant's infringement of the '207 Patent, SOTAT has suffered and will continue to suffer injury for which it is entitled to damages under 35 U.S.C. § 284 adequate to compensate it for such infringement, in an amount to be proven at trial, as well as enhanced damages.  SOTAT's damages are in no event less than a reasonable royalty.

## COUNT II
### (Indirect Patent Infringement of the '207 Patent)

63.     SOTAT incorporates by reference all previous allegations as though set forth fully here.

64.     **Induced Infringement:** Defendant has induced and continues to induce others to infringe one or more claims of the '207 Patent under 35 U.S.C. § 271(b) by knowingly, intentionally, and actively aiding and abetting others to infringe the '207 Patent, and with the specific intent that such others infringe the '207 Patent.  By way of example, Defendant

15

accomplishes such inducement by directing and/or instructing others to install, use, and/or operate its surveillance systems, including its devices, software, and applications.

65.    **Contributory Infringement:** Defendant has also contributed to the infringement of one or more claims of the '207 Patent under 35 U.S.C. § 271(c) by making, offering to sell, selling, or importing in or into the United States one or more components of its surveillance systems that are the subject of the claims of the '207 Patent, knowing such components to be especially made or adapted for use in an infringement of the '207 Patent and not suitable for any substantial non-infringing use.

66.    Defendant's infringing acts are without license or authorization from SOTAT.

67.    By no later than May 3, 2023, Defendant knew or should have known that its actions constitute induced and contributory infringement of the '207 Patent.  And yet Defendant has continued in its infringement.  Defendant's induced and contributory infringement is therefore willful and continuing, and this case is exceptional under 35 U.S.C. § 285.

68.    As a direct and proximate result of Defendant's induced and contributory infringement of the '207 Patent, SOTAT has suffered and will continue to suffer injury for which it is entitled to damages under 35 U.S.C. § 284 adequate to compensate it for such infringement, in an amount to be proven at trial, as well as enhanced damages.  SOTAT's damages are in no event less than a reasonable royalty.

## COUNT III
### (Direct Patent Infringement of the '809 Patent)

69.    SOTAT incorporates by reference all previous allegations as though set forth fully here.

70.     Defendant has infringed and continues to infringe one or more claims of the '809 Patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by installing, using, and operating its surveillance systems, including its devices, software, and applications.

71.     Defendant's infringing acts are without license or authorization from SOTAT.

72.     Defendant has had notice of the '809 Patent and its infringement since at least May 3, 2023.  Defendant's infringement is therefore willful and continuing, and this case is exceptional under 35 U.S.C. § 285.

73.     As a direct and proximate result of Defendant's infringement of the '809 Patent, SOTAT has suffered and will continue to suffer injury for which it is entitled to damages under 35 U.S.C. § 284 adequate to compensate it for such infringement, in an amount to be proven at trial, as well as enhanced damages.  SOTAT's damages are in no event less than a reasonable royalty.

**COUNT IV**
**(Indirect Patent Infringement of the '809 Patent)**

74.     SOTAT incorporates by reference all previous allegations as though set forth fully here.

75.     **Induced Infringement:** Defendant has induced and continues to induce others to infringe one or more claims of the '809 Patent under 35 U.S.C. § 271(b) by knowingly, intentionally, and actively aiding and abetting others to infringe the '809 Patent, and with the specific intent that such others infringe the '809 Patent.  By way of example, Defendant accomplishes such inducement by directing and/or instructing others to install, use, and/or operate its surveillance systems, including its devices, software, and applications.

76.     **Contributory Infringement:** Defendant has also contributed to the infringement of one or more claims of the '809 Patent under 35 U.S.C. § 271(c) by making, offering to sell, selling, or importing in or into the United States one or more components of its surveillance

17

systems that are the subject of the claims of the '809 Patent, knowing such components to be especially made or adapted for use in an infringement of the '809 Patent and not suitable for any substantial non-infringing use.

77.    Defendant's infringing acts are without license or authorization from SOTAT.

78.    By no later than May 3, 2023, Defendant knew or should have known that its actions constitute infringement of the '809 Patent.  And yet Defendant has continued in its infringement.  Defendant's infringement is therefore willful and continuing, and this case is exceptional under 35 U.S.C. § 285.

79.    As a direct and proximate result of Defendant's infringement of the '809 Patent, SOTAT has suffered and will continue to suffer injury for which it is entitled to damages under 35 U.S.C. § 284 adequate to compensate it for such infringement, in an amount to be proven at trial, as well as enhanced damages.  SOTAT's damages are in no event less than a reasonable royalty.

## PRAYER FOR RELIEF

In light of the foregoing, SOTAT respectfully prays for the following relief against Defendant:

A.    A judgment that Defendant has infringed one or more of the claims of the '207 Patent directly (either literally and/or under the doctrine of equivalents) and/or indirectly;

B.    A judgment that Defendant has infringed one or more of the claims of the '809 Patent directly (either literally and/or under the doctrine of equivalents) and/or indirectly;

C.    An award of all damages to which SOTAT is entitled under 35 U.S.C. § 284 for all past and continuing infringement, including but not limited to reasonable royalties, and an order requiring a full accounting of the same;

D.    An award of enhanced damages in accordance with the provisions of 35 U.S.C. § 284 as a result of Defendant's knowing and willful infringement;

E.    A finding that this case is exceptional under 35 U.S.C. § 285 and an award of all of the attorneys' fees incurred by SOTAT in this action;

F.    An assessment of interest, both pre- and post-judgment, on the damages awarded;

G.    An award of costs incurred by SOTAT in bringing and prosecuting this action; and

H.    Any other and further relief as the Court deems just and proper.

Date: August 5, 2025                    Respectfully submitted,


_/s/ Richard C. Weinblatt_____

Richard C. Weinblatt (#5080)
weinblatt@swdelaw.com
STAMOULIS & WEINBLATT LLC
800 N. West Street, Third Floor
Wilmington, DE 19801
Telephone: 302-999-1540

Benjamin D. Bailey (*pro hac vice* to be filed)
ben@cmblaw.com
CLAYTON, MCKAY & BAILEY, PC
800 Battery Ave., SE, Suite 100
Atlanta, GA 30339
Telephone: 678-667-1388
Fax: 404-704-0670

*Attorneys for Plaintiff SOTAT, LLC*

**Demand for Jury Trial**

Pursuant to Fed. R. Civ. P. 38(b), SOTAT, LLC hereby respectfully demands a trial by

jury on all claims and issues so triable.


Date: August 5, 2025                    Respectfully submitted,


                                        __/s/ Richard C. Weinblatt_____
                                        Richard C. Weinblatt (#5080)
                                        weinblatt@swdelaw.com
                                        STAMOULIS & WEINBLATT LLC
                                        800 N. West Street, Third Floor
                                        Wilmington, DE 19801
                                        Telephone: 302-999-1540

                                        Benjamin D. Bailey (*PHV* to be filed)
                                        ben@cmblaw.com
                                        CLAYTON, MCKAY & BAILEY, PC
                                        800 Battery Ave., SE, Suite 100
                                        Atlanta, GA 30339
                                        Telephone: 678-667-1388
                                        Fax: 404-704-0670

                                        *Attorneys for Plaintiff SOTAT, LLC*